PER CURIAM.
The employer/carrier appeal an order of the deputy commissioner finding that claimant suffered a compensable myocardial infarction as a result of an accident. We reverse.
Claimant is a 58 year old electrician. On the morning of the injury, he and another electrician, Thomas Payne, went to a job site where they were to erect a temporary electrical pole. This consisted of a 14 foot four-by-four with two 12 foot two-by-fours attached as braces. An electrical meter and junction box were attached to one end. This arrangement was variously described as weighing between 100 and 200 pounds.
Claimant testified that, because the men were in a hurry, Mr. Payne began digging the post-hole, while claimant carried the temporary pole from the truck. He tripped twice over some string discarded on the job site. Each time, he experienced immediate pains in his chest. He was able to get the post to the hole, but was unable to help Mr. Payne erect it. He said he complained of the pain at that time.
On deposition, Mr. Payne testified that both he and claimant carried the pole from the truck to the hole, that claimant did not trip, nor did he complain of chest pains at that time. Claimant did complain of chest *64 pains at the next job after unloading an extension cord and some hand tools.
Claimant testified that the pain continued until they reached the second job, and after unloading some equipment, he had to request that Mr. Payne take him to the doctor. Claimant was taken to the hospital where it was ascertained that he had suffered a myocardial infarction.[1]
At the hospital, claimant told his doctors that his symptoms began while'he was performing only mild work. One month later, he told his treating physician that his symptoms began while he was carrying the [heavy] temporary pole. While the deputy commissioner found claimant revealed a history of his tripping episode to his physician some 30 days after the injury, this finding is not supported by the record. The record reveals that claimant never did tell his treating physician about the string, that the doctor learned of the incident by way of a hypothetical question propounded by claimant’s attorney during the doctor’s deposition. This deposition was taken nine months after the accident.
There were only two witnesses to the setting of the temporary pole, Thomas Payne and the claimant. Their respective testimony was directly contradictory. Claimant said he carried the pole alone, Mr. Payne said they both carried it. Claimant said he tripped, Mr. Payne said he did not. Claimant said he complained to Mr. Payne of chest pains immediately after the tripping incident, Mr. Payne said he did not complain of chest pains until an hour later at a different job.
The resolution of such a conflict is within the province of the deputy commissioner. We would ordinarily be most reluctant to disturb his decision. However, the deputy commissioner, in discounting the testimony of Mr. Payne and others, relied on his finding that claimant reported the tripping incident to his physician within 30 days of the incident. We are unable to determine how much weight the deputy commissioner gave to this finding. Because the evidence was in such sharp conflict, and the balance so precarious, we reverse.
The decretal portion of the order is reversed and the cause remanded. The deputy commissioner is directed to reconsider the evidence in light of this opinion, without taking additional testimony.
ROBERT P. SMITH, Jr., C. J., and LARRY G. SMITH and WIGGINTON, JJ., concur.

. We note at the outset that this is not an ordinary heart attack case. The record reveals that claimant commonly carried items weighing as much as the temporary pole. Accordingly, there was no excessive or unusual stress or strain so as to satisfy the test of Victor Wine and Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla.1962). Instead, this case is one involving an accident. Tingle v. Board of County Commissioners, 174 So.2d 1 (Fla.1965).